# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **JAMES RIVER INSURANCE CO.,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-16-3464 |
| **BRICK HOUSE TITLE, LLC,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff James River Insurance Company ("James River") provided insurance to Defendant Brick House Title, LLC ("Brick House") from July 1, 2014 to July 1, 2015 and July 1, 2015 to July 1, 2016, under two lawyers professional liability insurance policies. It filed this declaratory judgment action to clarify its obligations to indemnify and/or defend under those policies with regard to an August 13, 2016 claim against Brick House. James River now seeks summary judgment, arguing that the undisputed facts show that Brick House knew about the potential claim against it during the first policy period but failed to notify James River until the second policy period, such that coverage is excluded under both policies. Pl.'s Mot. & Mem., ECF Nos. 23, 23-1.[1] I agree. Because neither the claim against Brick House nor the notice to James River of the potential claim occurred during the first policy period, the claim is not covered by the first policy. And, because Brick House knew about, but failed to disclose, the potential claim prior to the commencement of the second policy period, it is excluded from coverage under the second policy. Further, because Brick House did not breach either policy,

---

[1] The parties fully briefed the motion. ECF Nos. 23-1, 32, 32-1, 33. A hearing is not necessary. *See* Loc. R. 105.6.

James River does not need to show prejudice to prevail. Therefore, I will grant James River's motion.

**Background**[2]

In 2014, Brick House handled a closing ("Closing") for real property that the Estate of Virginia L. Mathis and Mathis's great-grandson Delante Mouton (together, the "Estate") owned. Jt. Stip. ¶¶ 5–6, ECF No. 24. Brick House had been responsible for remitting payment to the Estate's mortgage holder ("Nationstar") by an agreed-upon date (April 10, 2014) in an amount that the mortgage holder agreed to accept for a short sale of the property, *id.* ¶¶ 7–8, but Brick House's wire transfer did not go through and it did not realize the error until April 2015, *id.* ¶ 11. Brick House tried again to remit the payment on May 6, 2015, this time by check. *Id.* ¶ 13. The next day, despite having received the check, Nationstar informed Brick House of the payoff amount, and on May 18, 2015, it sent back the check. *Id.* ¶¶ 14, 16. As a result, the Estate's loan was past due and the lender initiated a foreclosure action. Third Party Compl. ¶ 23 in *Estate of Virginia L. Mathis, et al. v. Old Republic National Title Insurance Co. & Brick House Title, LLC*, No. 2015 CA 4954 R(RP) (D.C. Sup. Ct.) (the "*Mathis* Suit"), Ex. N, ECF No. 24-14. In the foreclosure action, the Estate filed a third party complaint against Brick House, as well as their title insurance provider, Old Republic National Title Insurance Company ("Old Republic"), on May 16, 2016, seeking damages from Brick House for negligence and breach of contract, based on its failure to pay off the Estate's mortgage. *Id.*; Jt. Stip. ¶¶ 10, 22.

Prior to the *Mathis* Suit, Old Republic received a letter that "advis[ed] of a potential claim against [it] relating to Nationstar's mortgage on the Estate's property." Jt. Stip. ¶ 15. Old

---

[2] I consider the facts in the light most favorable to Brick House as the non-moving party, drawing all justifiable inferences in its favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009).

Republic forwarded the letter to Brick House on May 12, 2015, *id.*, and wrote to Brick House again on May 18, 2015 with regard to the claim, "seeking a response to the May 12, 2015 correspondence," *id.* ¶ 17. Both of these events occurred during the 2014 Policy Period. Brick House acknowledged receipt on May 22, 2015. *Id.* ¶ 18. On July 23, 2015 (during the 2015 Policy Period), Brick House provided written notice of a potential claim to James River, for coverage with regard to the *Mathis* Suit under one of the two claims-made-and-reported insurance policies that Brick House held with James River. *Id.* ¶ 21; July 23, 2015 Ltr., Ex. M, ECF No. 24-13. The first policy (the "2014 Policy") was effective July 1, 2014 to July 1, 2015 (the "2014 Policy Period"), and the second policy (the "2015 Policy") was effective July 1, 2015 to July 1, 2016 (the "2015 Policy Period"). 2014 Policy, Ex. A, ECF No. 24-1; 2015 Policy, Ex. B, ECF No. 24-2.

The Estate served Brick House on August 13, 2016, and Brick House reported the *Mathis* Suit to James River on August 16, 2016. Jt. Stip. ¶ 23. To date, James River has been providing Brick House with a defense in the *Mathis* Suit, subject to a reservation of rights. *Id.* ¶¶ 24, 26. It initiated this action, seeking a declaration of rights that it does not have a duty to defend or indemnify Brick House under either the 2014 Policy or the 2015 Policy. Compl., ECF No. 1. Now, it seeks summary judgment, arguing that the undisputed facts show that it "does not owe coverage to Brick House for the [*Mathis* Suit] under the 2014 Policy because no 'Claim' . . . relating to the Closing was made against Brick House during the 2014 Policy Period," and Brick House did not "report a potential claim to James River" during the 2014 Policy Period. Pl.'s Mem. 2–3. It also contends that it is undisputed that Brick House knew of the claim before it entered into the 2015 Policy, such that the claim is excluded from coverage under the 2015

3

Policy pursuant to the "Prior Knowledge Exclusion" clause,[3] and therefore it is entitled to summary judgment with regard to the 2015 Policy as well. *Id.* at 2.

Brick House counters that, because "[t]here are material facts in dispute as to whether Defendant had prior awareness of a potential claim," summary judgment is not appropriate with regard to the 2015 Policy, and because James River has not shown prejudice, as required by the Maryland statute governing disclaiming insurance coverage in case of breach, the motion should be denied as to both policies. Def.'s Opp'n 1; Def.'s Mem. 1–2. In its reply, James River contends that Brick House misunderstands and mischaracterizes its claims, as it "has not argued or asserted that Brick House breached the Policies in any respect," such that the "arguments as to prejudice miss the mark." Pl.'s Reply 1–2. It maintains:

> [T]he undisputed facts before the Court clearly demonstrate that . . . Brick House knew or reasonably should have known prior to the 2015 Policy that Brick House's professional services rendered during the Closing could form the basis of a claim and, therefore, the Prior Knowledge Exclusion operates to bar coverage under the 2015 Policy.

*Id.*

## **Standard of Review**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of*

---

[3] The clause provides that the 2015 Policy "does not apply to any 'Claim' against the 'Insured' . . . [b]ased on or directly or indirectly arising from . . . [a] 'professional service' rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the 'professional service' could give rise to a 'claim.'" 2015 Policy 6.

4

*Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).  If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment.  *Id.*

## Discussion

### *Policy Provisions*

Both the 2014 Policy and the 2015 Policy provide:

THIS POLICY PROVIDES CLAIMS-MADE COVERAGE.  CLAIMS MUST FIRST BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND MUST BE REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR THE EXTENDED REPORTED PERIOD, IF EXERCISED. . . .

. . .

THIS POLICY IS WRITTEN ON A "CLAIMS-MADE AND REPORTED BASIS" AND PROVIDES PROFESSIONAL LIABILITY COVERAGE FOR THOSE CLAIMS THAT OCCUR SUBSEQUENT TO THE RETROACTIVE DATE STATED IN THE DECLARATIONS AND WHICH ARE FIRST MADE AGAINST [THE INSURED] AND REPORTED TO [THE INSURER] WHILE THIS POLICY IS IN FORCE.  NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST [THE INSURED] AND REPORTED TO [THE INSURER] AFTER THE END OF THE POLICY TERM UNLESS, AND TO THE EXTENT, AN EXTENDED REPORTING PERIOD APPLIES.

2014 Policy 2, 4; 2015 Policy 2, 4.[4]  They define "Claim" as "a written demand for monetary damages arising out of or resulting from the performing or failure to perform 'Professional Services,'" which, in turn, is defined as "services performed by the 'Insured' for others . . . as a lawyer, notary public or title agent" or in other capacities not relevant here.  2014 Policy 5, 6; 2015 Policy 5, 6.  As noted, the 2014 Policy Period ran from July 1, 2014 to July 1, 2015, and the 2015 Policy ran from July 1, 2015 to July 1, 2016.  2014 Policy 2; 2015 Policy 2.  Both policies obligated James River to

> pay on behalf of the "Insured" those sums in excess of the deductible the "Insured" becomes legally obligated to pay as "Damages" and "Claims Expenses" because of a "Claim" *first made against the "Insured" and reported to us in writing during the "Policy Period"* by reason of a "Wrongful Act" in the performance of or failure to perform "Professional Services" by the "Insured" . . . .

*Id.* at 4 (emphasis added).  The 2014 Policy also obligated James River to provide coverage for a claim made after the 2014 Policy Period, as if it had been made during the 2014 Policy Period,

> [i]f during the "policy period" the "Insured" . . . bec[a]me aware of any "wrongful act" that [could] reasonably be expected to be the basis of a "claim" against the "Insured" and . . . the "Insured" . . . during the "policy period" g[a]ve written notice to the Company of such "wrongful act" and the reason for anticipating a "claim[.]"

2014 Policy 13 ("Awareness Provision").  The 2015 Policy included the same provision with regard to claims made after the 2014 Policy Period.  2015 Policy 13.  The 2015 Policy includes a Prior Knowledge Exclusion that excludes from coverage under the policy "any 'Claim' against the 'Insured' . . . [b]ased on or directly or indirectly arising from . . . [a] 'professional service'

---

[4] The parties agree that Maryland law applies to this contractual dispute.  *See* Pl.'s Mem. 10; Def.'s Mem. 1.  The language and meaning of both policies is clear and undisputed, and therefore I "construe it as a matter of law." *Culver v. Cont'l Ins. Co.*, 1 F. Supp. 2d 545, 546 (D. Md. 1998) (applying Maryland law), *aff'd*, 11 F. App'x 42 (4th Cir. 1999).  Because the policies' pages are not sequentially numbered, I cite to the corresponding page numbers on CM/ECF.

rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the 'professional service' could give rise to a 'claim.'" 2015 Policy 6.

*2014 Policy*

The following facts are undisputed:

- Old Republic received a letter that "advis[ed] of a potential claim against [it] relating to Nationstar's mortgage on the Estate's property" and, on May 12, 2015, Old Republic forwarded the letter to Brick House. Jt. Stip. ¶ 15.

- Brick House provided written notice of a potential claim against it to James River on July 23, 2015, after the 2014 Policy Period ended. Jt. Stip. ¶ 21.

- The actual claim against Brick House was not made until August 13, 2016, when the Estate initiated the *Mathis* Suit. *Id.* ¶ 23.

- James River has not shown that it was prejudiced by the fact that the potential claim was reported after the 2014 Policy Period ended. Def.'s Mem. 2; *see* Pl.'s Reply (failing to rebut argument that James River has not shown prejudice).

According to James River, under these facts, it has "no duty to provide coverage to Brick House for the [*Mathis* Suit] under the 2014 Policy because *no Claim* was made during the Policy Period," nor was notice to James River of a potential claim provided by Brick House during the 2014 Policy Period, and as a result, "the insuring agreement was never triggered." Pl.'s Mem. 11, 12 (emphasis added). In Brick House's view, "Plaintiff's argument that notice was too late for the 2014 Policy is . . . dependent on whether Plaintiff can show by a preponderance of evidence that it has suffered actual prejudice . . . ." Def.'s Mem. 1–2 (emphasis added).

Brick House relies on Maryland's notice-prejudice statute, Md. Code Ann., Ins. § 19-110, which provides:

7

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured . . . has breached the policy by . . . not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of . . . notice has resulted in actual prejudice to the insurer.

This statute applies to both claims-made and claims-made-and-reported policies. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. The Fund for Animals, Inc.*, 153 A.3d 123, 127 n.2 (Md. 2017). And, it applies to policies "in which the act triggering coverage occurs during the policy period, but the insured does not comply strictly with the policy's notice provisions." *Sherwood Brands, Inc. v. Great Am. Ins. Co.*, 13 A.3d 1268, 1288 (Md. 2011). Under such circumstances, "§ 19-110 mandates that notice provisions be treated as covenants, such that failure to abide by them constitutes a breach of the policy sufficient for the statute to require the disclaiming insurer to prove prejudice." *Id.*; *see also Nat'l Union Fire Ins. Co.*, 153 A.3d at 127 n.2 (quoting *Sherwood*).

But here, service of the *Mathis* Suit—the act triggering coverage—did not occur during the 2014 Policy Period; it is undisputed that the *Mathis* Suit was not served upon Brick House until August 13, 2016, long after the 2014 Policy Period (and even the 2015 Policy Period) ended. Jt. Stip ¶ 23; *see* Def.'s Mem. 5; Ans. ¶ 26; Pl.'s Mem. 11-12. And, when "the act triggering coverage—usually notice of a claim or suit being filed against and served upon an insured under third-party liability policies—does not occur until after the expiration of the liability policy," as is the case here, it is a "non-occurrence of the condition precedent to coverage," rather than a "breach of the policy." *Sherwood*, 13 A.3d at 1288; *see Navigators Specialty Ins. Co. v. Med. Benefits Adm'rs of MD, Inc.*, No. ELH-12-2076, 2014 WL 768822, at *10 (D. Md. Feb. 21, 2014) ("§ 19–110 . . . which . . . requires an insurer to show actual prejudice before disclaiming coverage on the grounds that the claim was untimely *reported to the insurer,* does not require an insurer to show prejudice before disclaiming coverage on the

grounds that the claim was *made against the insured* prior to the inception of the policy. In other words, the actual prejudice requirement of Ins. § 19–110 applies only to the notice provisions of a policy."); *Fin. Indus. Regulatory Auth., Inc. v. Axis Ins. Co.*, 951 F. Supp. 2d 826, 836 (D. Md. 2013) ("[T]he notice requirement of Ins. § 19-110 only applies when 'the insured . . . has breached the policy.'" (quoting Ins. § 19-110)), *declined to follow on other grounds by Navigators*, 2014 WL 768822. Thus, Brick House's failure to notify James River of a claim that did not occur within the 2014 Policy Period was not a breach. *Sherwood*, 13 A.3d at 1288.

Because Brick House did not breach the policy, Ins. § 19-110, with its requirement that an insurer to show prejudice to relieve itself of the contractual obligation to provide coverage on the basis of untimely notice, does not apply to that failure to notify. *Id.*; *Navigators*, 2014 WL 768822, at *10; *Axis Ins. Co.*, 951 F. Supp. 2d at 836. Indeed, Brick House acknowledges that, "for § 19-110 to be in play, the insured must breach the insurance policy by not giving the insurer required notice." Def.'s Mem. 8. And, the cases Brick House cites in support of its position that James River must prove prejudice are inapposite, as they involved attempts to disclaim coverage based on alleged breach of contract. *See Oliff-Michael v. Mut. Benefit Ins. Co.*, 262 F. Supp. 2d 602, 604 (D. Md. 2003) (stating that insurer seeking to disclaim coverage under policy due to insured's alleged breach had to show actual prejudice); *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 767 A.2d 831, 832, 835 (Md. 2001) (same).

As best I can discern, Brick House argues that Ins. § 19-110 applies nonetheless, by operation of the Awareness Provision, which it insists is a notice provision and therefore must be a covenant. Def.'s Mem. 8–10. Certainly, James River could have been obligated under the 2014 Policy, if Brick House had given written notice of the potential claim against it during the 2014 Policy Period. 2014 Policy 13. But, it is undisputed that Brick House did not report the

potential claim until July 23, 2015, after the 2014 Policy Period ended. And, Brick House correctly asserts that its July 23, 2015 notice to James River "is not even a breach of contract." Def.'s Mem. 10. Indeed, while it would be a breach not to report an *actual* claim that occurred within the 2014 Policy Period, *see* 2014 Policy 2 ("CLAIMS MUST FIRST BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND *MUST BE REPORTED* IN WRITING TO THE COMPANY *DURING THE POLICY PERIOD*." (emphasis added), failure to give notice of a *potential* claim under the Awareness Provision, to bring the possible, future claim within the scope of the 2014 Policy, is not a breach of the 2014 Policy. The Awareness Provision did not require the insured to provide notice; it simply provided that "*if* the 'Insured'" gave notice, "then any such 'claim' that may subsequently be made against the 'Insured' . . . [would] be deemed for the purposes of this insurance to have been made during the 'policy period.'" 2014 Policy 13 (emphasis added).

Brick House relies on *Sherwood*'s holding that "§ 19-110 mandates that notice provisions be treated as covenants," 13 A.3d at 1288. But, Brick House takes this language out of context. As discussed, the *Sherwood* Court limited that holding to the "situation" in which "the act triggering coverage occurs *during the policy period*," *id.*, which clearly is not the case here. Accordingly, Ins. § 19-110 and its notice provision are inapplicable. *See id.*; *Axis Ins. Co.*, 951 F. Supp. 2d at 836.

Thus, because neither the condition precedent to coverage (a claim) nor notice of a potential claim occurred within the 2014 Policy Period, James River is not obligated to provide coverage under that policy, and prejudice is not relevant. *See Axis Ins. Co.*, 951 F. Supp. 2d at 836; *Sherwood*, 13 A.3d at 1287–88 (observing that its conclusion was consistent with *T.H.E. Insurance Co. v. P.T.P. Inc.*, 628 A.2d 223, 223 (Md. 1993), in which "the suit was not filed

against P.T.P. (the insured) until after the expiration of the policy," and the court held that "[t]he suit not being filed until after the expiration of the policy was not a 'breach' of the policy, but rather, the non-occurrence of a condition precedent, *i.e.,* that a claim be 'made' during the policy period"; stating that, "[i]n the absence of a breach of the policy, as required by the statute, [the *T.H.E.* Court was] correct to hold that [the predecessor to § 19-110] did not apply to require T.H.E. to prove that it was prejudiced by the late-delivered notice"); *see also Woznicki v. GEICO Gen. Ins. Co.*, 115 A.3d 152, 172 (Md. 2015) (noting that a condition precedent is a requirement "that must be performed before any obligation on the part of the assurer commences" (citation omitted)). Consequently, James River is entitled to judgment as a matter of law with regard to the 2014 Policy, under which it has no obligation to provide coverage with regard to the *Mathis* Suit. *See Sherwood*, 13 A.3d at 1288.

### *2015 Policy*

It is undisputed that Brick House provided notice of a potential claim during the 2015 Policy Period. Jt. Stip. ¶ 21. This brought the actual claim, which did not occur until August 13, 2016, after the 2015 Policy Period ended, within the purview of the 2015 Policy by operation of the Awareness Provision, which obligated James River to provide coverage for a claim made after the 2015 Policy Period ended, as if it had been made during the 2015 Policy Period, "[i]f during the 'policy period'" Brick House both "bec[a]me aware of a[] 'wrongful act' that [could] reasonably be expected to be the basis of a 'claim' against [it]" and "g[a]ve written notice to the Company of such 'wrongful act' and the reason for anticipating a 'claim[.]'" 2015 Policy 13. Yet, it is also undisputed that Brick House performed allegedly negligent services related to the Closing before the 2015 Policy Period began, Jt. Stip. ¶¶ 5–8, and the Prior Knowledge Exclusion in the 2015 Policy provides that the policy does not apply to any claim against Brick

House arising from "'[a] professional service' rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the 'professional service' could give rise to a 'claim.'" 2015 Policy 6. James River argues that it is entitled to judgment as a matter of law with regard to the 2015 Policy because Brick House knew of, or reasonably should have foreseen, the potential for the Estate to bring a claim against it for professional services performed by Brick House before the 2015 Policy began, yet failed to disclosure that possibility, thereby excluding the claim from coverage. Pl.'s Mem. 2. Brick House counters that a genuine dispute exists regarding whether Brick House reasonably should have known about the claim and, regardless, James River is not entitled to judgment because "[a]ny denial of coverage based on an alleged breach of contract must be supported by proof of actual prejudice by the insurer." Def.'s Mem. 2–3. I disagree.

As discussed, § 19-110 and its prejudice requirement only apply where there is a breach. With regard to the 2015 Policy, Brick House asserts that it provided notice "during the 2015 Policy," such that its "notice of the claim was . . . not late" and "[t]here was no breach of contract at all." Def.'s Mem. 15. James River agrees that there was no breach. *See* Pl.'s Reply 1–2. Accordingly, because there was no breach, James River need not prove prejudice. *See Sherwood*, 13 A.3d at 1288; *Navigators*, 2014 WL 768822, at *10; *Axis Ins. Co.*, 951 F. Supp. 2d at 836.

As for whether Brick House knew about or reasonably should have foreseen the potential claim before the 2015 Policy Period began on July 1, 2015, Brick House offers the June 11, 2017 affidavit of its president, Nancy Gusman. *See* Gusman Aff., Def.'s Ex. 1, ECF No. 32-2. According to Gusman, the wire transfer that Brick House sent to Nationstar to satisfy the Estate's debt on its real property had not been deducted from its escrow account as of late April 2015,

"due to a banking code error in the transfer," so Brick House mailed a check in the same amount on May 6, 2015. *Id*. ¶ 4. Despite the parties' joint stipulation that, on May 7, 2015, the day after Brick House sent the check to satisfy the loan amount, Nationstar informed Brick House of the payoff amount, and on May 18, 2015, it sent back the check, Jt. Stip. ¶¶ 14, 16, Gusman insists that "Nationstar deposited and accepted Brick House Title's May 6, 2015 payment." Gusman Aff. ¶ 6. She asserts that, as a result, she "assumed the [Estate] Closing transaction was completed by NationStar's [sic] acceptance of the check." *Id.* ¶ 7. Thus, when Old Republic emailed her on May 18, 2015 about "a potential claim concerning the [Estate] Closing," she still "believed NationStar [sic] had accepted Brick House Title's escrow check and that there was no viable claim about which to notify James River." *Id.* ¶¶ 8–10. She also states that she "was instructed by Old Republic to permit NationStar [sic] to return the May 6, 2015 payment." *Id.* ¶ 18.

But, it remains undisputed that Nationstar returned Brick House's check before the 2015 Policy Period began. Jt. Stip. ¶ 16. Moreover, I cannot reconcile Gusman's assertion that Nationstar accepted and deposited the check with the parties' stipulation that Nationstar informed Brick House of the payoff amount the very same day, thereby indicating that the check was not accepted, at least not as satisfaction of the loan amount. *See Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677 (2010) ("[Factual stipulations are] binding and conclusive ..., and the facts stated are not subject to subsequent variation. So, the parties will not be permitted to deny the truth of the facts stated, ... or to maintain a contention contrary to the agreed statement . . . ." (quoting 83 C.J.S., Stipulations § 93 (2000) (footnotes omitted)). The request for the payoff amount and the check's return clearly put Brick House on notice that it had not completed the Closing transaction as it

was responsible for doing. And, it is undisputed that, on August 30, 2016, Gusman emailed James River, asserting that she "was unaware of any potential claim on this file until April/May 2015 and put James River on Notice in June/July 2015 when it became apparent that [she] would not be able to resolve this on [her] own." Aug. 30, 2016 Email, Jt. Ex. P, ECF No. 24-16. In other words, she became aware of a potential claim in April or May 2015, long before the 2014 Policy Period ended on July 1, 2015. *See id.*

In her affidavit, Gusman attempts to explain why, despite the return of the check and the awareness she gained in April or May, it was reasonable for her not to notify James River of a claim. Her position is that, because she thought the claim could not succeed and that she could resolve the matter on her own, she had no reason to know it was the kind of claim for which she had to provide notice. This is too clever by half. The question is not whether Brick House (acting through Gusman) subjectively knew or could have reasonably foreseen that its acts or omissions could give rise to a *meritorious* claim, or even a *potentially successful* claim. Rather, the question is whether, objectively viewed, a person possessing Gusman's knowledge knew or could have reasonably foreseen that its acts or omissions "could give rise to a 'claim,'" whether meritorious or not. It is undisputed that, even if Gusman subjectively thought she could resolve the claim, she was aware of a potential claim by May 2015, before the 2015 Policy went into effect. Consequently, that claim was excluded from coverage under the 2015 Policy. *See* 2015 Policy 6.

This result is further warranted by the fact that "Maryland courts use an objective standard of reasonableness" to determine "whether [a] prior knowledge exclusion applies," and in doing so, they "consider whether there is any material fact in dispute that would have put an objectively reasonable [lawyer or title agent] on notice that a malpractice [or negligence] suit

was forthcoming." *Westport Ins. Corp. v. Albert*, 208 Fed. App'x 222, 225 (4th Cir. 2006) (citing *Maynard v. Westport Ins. Corp.*, 208 F. Supp. 2d 568, 571 (D. Md. 2002); *Culver v. Cont'l Ins. Co.*, 1 F. Supp. 2d 545, 546 (D. Md. 1998)).[5] On the undisputed facts before me, no reasonable factfinder would believe that Gusman, and through her, Brick House, were unaware before the commencement of the 2015 Policy Period that Brick House had performed professional services that could give rise to a claim, or of facts that would, objectively viewed, make such a claim reasonably foreseeable. After all, after "Old Republic forwarded a letter to Nancy Gusman of Brick House advising of a potential claim against Old Republic relating to Nationstar's mortgage on the Estate's property" and "sought information about the Closing from Brick House," Jt. Stip. ¶ 15, Gusman responded in a July 10, 2015 email to Old Republic: "I have not reported it [i.e., the circumstances surrounding the Closing] to the E&O [James River] yet due to the timing of the claim coming in *and the submission of my renewal*." July 10, 2015 Email, Jt. Ex. L, ECF No. 24-12 (emphasis added). She added: "I also wanted to see where this [potential claim] is going before I involve them." July 10, 2015 Email. Thus, there is no dispute that Gusman was aware of a possible claim before the commencement of the 2015 Policy Period, yet consciously elected not to report it. This clearly triggered the Prior Knowledge Exclusion. *See* 2015 Policy 6. Therefore, James River is entitled to judgment as a matter of law with regard to the 2015 Policy.

---

[5] In some cases, where an insurance policy's prior knowledge exclusion does not include "clear language invoking an objective standard through words such as 'reasonable' or 'foreseeable,'" a subjective knowledge standard applies. *See McDowell Bldg., LLC v. Zurich Am. Ins. Co.*, No. RDB-12-2876, 2015 WL 1656497, at *5 (D. Md. Apr. 13, 2015). But, "[t]he words 'reasonable' or 'foreseeable' clearly implicate an objective standard," *id.*, and here, the Prior Knowledge Exclusion includes the language "knew or could have reasonably foreseen." 2015 Policy 6.

## Conclusion

In sum, the August 13, 2016 claim against Brick House is not covered by either the 2014 Policy or the 2015 Policy, and because Brick House did not breach either policy, James River does not need to show prejudice to prevail. Therefore, James River's Motion for Summary Judgment, ECF No. 23, IS GRANTED.

## ORDER

Accordingly, it is this  6th day of November 2017, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 23, IS GRANTED;

2. Judgment IS ENTERED in Plaintiff's favor;

3. James River does not owe coverage to Brick House under either the 2014 Policy or 2015 Policy for the allegations included in the Third Party Complaint in the *Mathis* Suit; and

4. The Clerk SHALL CLOSE this case.

/S/
Paul W. Grimm
United States District Judge